UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DERON L. ADAMS,

       Petitioner,

 v.             **DECISION AND ORDER**
                08-CR-073S
                08-CR-323S[1]
                11-CV-804S

UNITED STATES OF AMERICA,

       Respondent.

## I.  INTRODUCTION

   Petitioner, Deron Adams, moves to vacate, set aside, or correct his sentence and

conviction pursuant to 28 U.S.C. § 2255. For the reasons discussed below, this Court finds

a hearing on this motion unnecessary and denies Adams' motion.[2]

## II.  BACKGROUND

   On November 5, 2008, Adams entered into an agreement with the Government

wherein he agreed to plea guilty to Counts One and Two of Indictment 08-CR-73S, which

charged him with possessing, with intent to distribute, 50 grams or more of cocaine base—

a  violation of 21 U.S.C. § 841(a)(1). (Plea agreement, ¶ 1(a)-(b); Docket No. 4; Plea Hr'g

---

[1]Case number 08-CR-323 was opened pursuant to an Information charging Adams' with possession of a firearm in furtherance of a drug-trafficking crime. Although neither Adams' § 2255 motion nor any of the papers in opposition to or in support of that motion were filed in case number 08-CR-323, Adams' motion clearly pertains to that charge. Indeed, he pleaded guilty to that charge in connection with his plea in 08-CR-73.  Therefore, this Decision and Order applies equally to 08-CR-323.

[2]§ 2255 states that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255.  "By implication, if the reviewing court finds that the record of the underlying criminal action does conclusively show that the petitioner is entitled to no relief, it may dismiss the petition on the basis of the parties' submissions and need not hold an evidentiary hearing." Yushuvayev v. United States, 532 F. Supp. 2d 455, 471 (E.D.N.Y. 2008).

Tr., at 24; Docket No. 59.)  Adams also agreed to waive an indictment and plea guilty to

a one-count information charging him with possession of firearm in furtherance of a drug-

trafficking crime, which is a violation of 18 U.S.C. § 924(c)(1). (Id.)

The plea agreement set out the factual bases for those charges: (1) two controlled

cocaine buys (totaling 20.4 grams) by a Confidential Source; (2) a search of Adams' home

that uncovered illicit drugs, a marijuana growing operation, ammunition, approximately

$18,000 in cash, and drug paraphernalia; (3) a search of his vehicle that uncovered a

loaded handgun; and (4) observations by federal agents who saw Adams using his vehicle

for cocaine sales. (Plea agreement, ¶ 5(a)-(b).)

At his plea hearing, the Court and Adams had the following exchange concerning

the waiver of his right to indictment:

> THE COURT: Okay. All right. Given that, Mr. Adams, we're
> going to go through the documents and if there's anything you
> don't understand, let me know. One of them, on the gun
> charge I think it is, has the waiver of indictment form. There's
> what we call a series of rights or panoply of rights that attach
> to you. And certain ones if we're going to go around them, you
> have to formally give up your right such as the right to a grand
> jury, and that would be with respect to the possession of a
> firearms charge. Ordinarily, as in  the case of the indictment,
> 23 grand jurors convene. They hear evidence. They decide
> whether or not certain charges should be brought against  you.
> And basically it's is there enough evidence to support the
> bringing of a charge. That's all it really means, and in the case
> of possession of firearms charge you're giving up that right,
> because a grand jury can decide there's not enough evidence
> to bring any charges, or it can bring more severe ones, or the
> same ones that we're dealing with, you understand that, right?
> THE DEFENDANT: Yes, sir.
> THE COURT: You're comfortable giving up your right on the
> possession of gun charge on the grand jury?
> THE DEFENDANT: Yes, sir.
> THE COURT: That's the albatross here, among others, but it
> adds significantly to what you face time-wise, right?

2

THE DEFENDANT: Yes.

(Plea Hr'g Tr., at 9.)

Adams also indicated that he engaged in the charged activity:

> THE COURT: Okay. Factual basis statement. And this is what I was talking about. I went over it before I took the bench, and it lays out in detail transactions and quantities, and money and evidence and search warrants and descriptions of firearms, and casings, and all kinds of stuff in here. And that's what the government is saying would be its proof if you went to trial. Did you go over it in detail?
> THE DEFENDANT: Yes.
> THE COURT: All right. Is it accurate?
> THE DEFENDANT: Yes.
> THE COURT: You did what's charged here, right?
> THE DEFENDANT: Yes.

(Id., at 17.)

And he signed the agreement of his own free will:

> THE COURT: All right. This is the full agreement then, is that true?
> THE DEFENDANT: Yes.
> THE COURT: You signed it, right?
> THE DEFENDANT: Yes, sir.
> THE COURT: Anybody force you to sign it?
> THE DEFENDANT: No, sir.

(Id., at 23.)

At some point after the plea hearing, however, Adams grew uneasy about the plea agreement, expressing those misgivings through *pro se* objections to the presentence investigation report ("PSR"). His retained attorney, Anthony Lana, disagreed with those objections and did not file any objections of his own. This Court convened the parties on February 23, 2009 to discuss Adams' concerns.

At that proceeding, Adams informed this Court that he found certain facts in the PSR inaccurate; this, despite the fact that those facts made up the foundation of his plea.

3

(2/23/09 Hr'g Tr., at 11; Docket No. 32.) Specifically, after completing legal research, Adams took issue with the § 924(c)(1) charge and the Government's conversion of seized money into a quantity of drugs. (Id., at 13.) He further indicated, however, that he did not want to go to trial. (Id.)

Lana, his attorney, indicated that he had several discussions with his client, and that he informed Adams that his only option, if he disagreed with those facts, was to go to trial. (Id., at 7-9, 12, 14-15.) Moreover, he reminded Adams that he already swore to the veracity of those facts at the plea hearing. (Id.) Lana also informed this Court that, through several plea negotiations, he raised Adams' concerns with the Government, but the prosecution was unwilling to bend. (Id.) This Court then questioned Adams about this representation:

> THE COURT: But you don't deny that he explained all of this to you, that it was the best deal that he could come up with short of going to trial, and you made the decision to accept the plea --
> THE DEFENDANT: Yes.

(Id., at 14.)

Although Adams went on to recapitulate his frustrations with the plea, this Court was satisfied that the plea was entered into knowingly and voluntarily, and thus concluded the hearing and set a sentencing date. (Id., at 15-16.)

On November 11, 2009, this Court, crediting Adams with a three-level reduction for his acceptance of responsibility, sentenced Adams to a 90-month term of imprisonment (30 months for the cocaine-possession charge and a mandatory 60 months for the firearm charge). (Sentencing Tr., at 10, 56; Docket No. 54.)

Thereafter, Adams appealed the judgment and sentence. (Notice of Appeal; Docket

No. 57.) The Second Circuit rejected his argument that he was improperly charged with violating 18 U.S.C. § 924(c) and found that he knowingly and voluntarily entered into his plea. The court concluded, "While we express no opinion as to their legal merit, the remaining arguments in Adams's *pro se* response are more appropriately raised in a 28 U.S.C. § 2255 proceeding . . . ." (Second Circuit Mandate; Docket No. 61.)

On September 19, 2011, Adams filed the present motion.[3]

## III.  DISCUSSION

### A.     Standard of Review

28 U.S.C. § 2255 allows federal prisoners to challenge the constitutionality of their sentences.  In pertinent part, that section provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

The Second Circuit has held that a "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Graziano v. United States,

---

[3]Motions under § 2255 carry a one-year statute of limitations. 18 U.S.C. § 2255(f). If there is an appeal, however, the clock does not begin to run until the time for seeking *certiorari* review expires. Clay v. United States, 537 U.S. 522, 532, 123 S. Ct. 1072, 1079, 155 L. Ed. 2d 88 (2003). This action is therefore timely.

83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

**B.     Adams' § 2255 Motion**

Adams brings this motion alleging 12 separate grounds for relief. Many grounds, however, overlap with one another, and can be condensed into two broad categories: those concerning (1) the validity of the charges and conviction, and (2) the efficacy of his counsel.

**1.     The Validity of the Charges and Conviction**

In grounds one, three, four, five, six, eleven, and twelve, Adams—in one form or another—attempts to attack the validity of the charges to which he pled guilty. Each of his arguments are summarized below:

- Ground One – The search warrant and supporting affidavit did not establish probable cause.

- Ground Three – There was insufficient evidence to support the firearm charge.

- Ground Four – The nature of the charge (presumably 18 U.S.C. § 924(c)) was not explained to him.

- Ground Five – The United States Attorneys Office violated the "clean hands doctrine" and coerced him into pleading guilty.

- Ground Six – The vehicle, where the gun was found, was not associated with the cocaine or his cocaine trade.

- Ground Eleven – There was no physical evidence, nor any witnesses,

establishing a link between the vehicle and the cocaine.

- Ground Twelve – This Court lacked jurisdiction to take the plea because it

  did not inform him of the nature of the charge.

Each of these arguments, however, must fail. Adams has already appealed his 18 U.S.C. § 924(c) conviction.[4] And the Second Circuit has dismissed all claims relating to the validity of that charge and his subsequent plea.  It found:

> With respect to the argument in Adams's *pro se* response that he was not properly charged with violating 18 U.S. C. § 924(c) and did not knowingly plead guilty to violating that provision, the district court properly rejected this argument based on the statements contained in Adams's plea agreement and made at his plea hearing . . . Additionally, at his plea allocution, the district court determined that Adams had reviewed the factual basis statement contained in the plea agreement, that this factual basis statement was accurate, and that Adams had committed the conduct described therein. Adams's present attempt to repudiate these determinations is unavailing. See Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self inculpatory statements made under oath at his plea allocution 'carry a strong presumption of verity,' . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them . . . .").

(Second Circuit Mandate, at 2.)

Adams' continued attempts to repudiate the determinations regarding the validity of the plea and the facts on which it was based remain unavailing. As the Second Circuit recognized, this Court found the plea's factual basis sufficient and Adams' assent thereto knowing. Although not specifically mentioned in the Second Circuit's decision, this Court's finding applied equally to each of the counts to which Adams pleaded. Therefore, the

---

[4]The full scope of Adams' appeal is unclear. The Second Circuit specifically addresses only the 18 U.S.C. § 924(c) conviction. The appellate court does, however, reference Adams' "remaining arguments," but does not address them.

arguments listed above, with the exception of grounds four and twelve, are rejected without further discussion. <u>See, e.g.</u>, <u>Hayle v. United States</u>, 815 F.2d 879, 881 (2d Cir. 1987) ("It is well-settled that a defendant's plea of guilty admits all the of the elements of a formal criminal charge"); <u>Adames</u>, 171 F.3d at 732.

Grounds four and twelve require a separate discussion. In ground four, Adams appears to argue that he lacked sufficient notice regarding the 18 U.S.C. § 924(c) charge. After accurately explaining that the Information did not, at the time of plea, have its own case number, Adams writes, "Obviously there had not been a formal case opened, nor any minimum constitutional provision that allow Notice [*sic*] and understanding of the facts . . . ."

Essentially the same argument is found at ground twelve, where Adams argues that this Court did not have jurisdiction because it failed to advise him of the "nature of the charge," as required by Federal Rule of Criminal Procedure 7(b). Construed liberally, both grounds allege that because the Government proceeded by way of an Information, a lack of notice regarding the 18 U.S.C. § 924(c) charge warrants vacatur.

Initially, it should be noted that there is no dispute that Adams waived his right to a Grand Jury Indictment. This is permissible. <u>See</u> Fed. R. Crim. P. 7(b) ("An offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant—in open court and after being advised of the nature of the charge and of the defendant's rights—waives prosecution by indictment."). And, although there was no case number, nor an indictment, on the 18 U.S.C § 924(c) charge, this Court confirmed that Adams was aware of nature of that charge, and it fully advised him of his rights concerning a Grand Jury. Regarding waiver:

> THE COURT: You have to formally give up your right such as the right to a grand jury, and that would be with respect to the possession of firearms charge. Ordinarily, as in the case of the indictment, 23 grand jurors convene. They hear evidence. They decide whether or not certain charges should be brought against you. And basically it's is there enough evidence to support the bringing of a charge. You're comfortable giving up your right on the possession of contract on the grand jury?
> THE DEFENDANT: Yes, sir.

(Plea Hr'g Tr., at 8-9.)

Regarding the nature of the charge:

> THE COURT: Okay. Factual basis statement. And this is what I was talking about. I went over it before I took the bench, and it lays out in detail transactions and quantities, and money and evidence and search warrants and descriptions of firearms, and casings, and all kinds of stuff in here. And that's what the government is saying would be its proof if you went to trial. Did you go over it in detail?
> THE DEFENDANT: Yes.
> THE COURT: All right. Is it accurate?
> THE DEFENDANT: Yes.
> THE COURT: You did what's charged here, right?
> THE DEFENDANT: Yes

(Id., at 17.)

The plea agreement clearly set out the factual basis for each of the counts to which Adams pleaded guilty. (See Plea agreement, ¶ 5(a)-(b).) There is accordingly no merit to Adams' contention that he was not fully aware of the nature of the charges against him; grounds four and twelve are therefore rejected.

### 2.    Ineffective Assistance of Counsel

The remaining grounds—two, seven, eight, nine, and ten—all pertain to the effectiveness of Adams' attorney.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. amend

VI.  It is well-established that "the right to counsel is the right to the effective assistance of counsel." Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

To sustain an ineffective-assistance-of-counsel claim, a defendant must satisfy two requirements: he must show that counsel's performance was deficient and that the deficient performance prejudiced the defense, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding below would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S .Ct. 2052, 80 L. Ed. 2d 674 (1984).

At the outset, Adams' ineffective-assistance-of-counsel claim is first undermined by Adams' failure to argue that, but for counsel's alleged deficiencies, he would have rejected the plea and gone to trial. See Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985) (when a conviction is secured by way of plea, the second Strickland factor is modified to require a defendant to demonstrate that, but for counsel's unprofessional errors, he would not have pled guilty). Indeed, his complaint appears to be that he deserved a more advantageous plea offer; he never asserts that he would have preferred a trial. And although "Hill does not [] provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations," Missouri v. Frye, 566 U.S. ----, 132 S. Ct. 1399, 1409-10, 182 L. Ed. 2d 379 (2012), Adams' claim—assuming, arguendo, such a claim is cognizable—must fail because there is no indication that his attorney's performance negatively affected the plea offer. See id. at 1410; accord United States v. Moya, 676 F.3d 1211, 1214 (10th Cir. 2012) (finding petitioner's claim lacking under Frye's "more general test," as compared to Hill's "would-

10

have-gone-to-trial" test).  To the contrary, despite counsel's efforts, the prosecution was not willing to entertain the type of plea that Adams believes he deserved.

Nonetheless, for the sake of comprehensiveness, this Court will address each ground raised.

In ground two, Adams argues that his counsel was ineffective because he failed to file a motion to "suppress the evidence." This allegation is facially deficient because Adams does not identify the evidence he wants suppressed, or how the suppression of that (unidentified) evidence would have led to a different result. This ground is therefore rejected. See Paez v. United States, Nos. 11 CV 2688(HB), 08 CR 0823–03(HB), 2012 WL 1574826 (S.D.N.Y. May 3, 2012) (denying § 2255 motion, where petitioner argued that his counsel failed to file a motion to suppress, because petitioner did not suggest any plausible argument that a motion to suppress would have affected the outcome).

Even assuming that Adams intends to refer evidence seized pursuant to the search warrants, he fails to articulate any legitimate basis leading to the conclusion that the warrant or affidavit were executed improperly. As such, he cannot show that a motion would have been meritorious; nor can he show a reasonable probability that the outcome would have been different if the evidence had been suppressed. See United States v. Matos, 905 F.2d 30, 32 (2d Cir.1990) ("In order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed.").

In ground seven, Adams again raises concerns about the lack of evidence supporting the 18 U.S.C. § 924(c) charge. Here, he accuses his attorney of failing to raise

these objections on his behalf, and posits that if it were not for his own initiative "the court could have been misle[]d and could have entered a harsher sentence." (Motion, at 9; Docket No. 62.) Of course, his argument inherently concedes a failure to meet <u>Strickland</u>'s prejudice prong. Further, Lana, his attorney, testified that he did indeed raise these concerns, but that the Government required the firearm charge to be a part of the plea agreement. There is thus no merit to this challenge.

In ground eight, Adams takes issue with the fact that Lana filed an <u>Anders</u> brief. The Second Circuit, however, found the brief warranted and granted Lana's <u>Anders</u> motion. (Second Circuit Mandate, at 1.)

In ground nine, Adams complains that Lana remained on his case even though Adams requested that he file a motion to withdraw as counsel. Lana, however, did file such a motion, (Docket No. 41), and he remained on the case under this Court's direction. Although Adams complains generally that an "attorney [who is no longer desired] does not have any right to continue to control the person's life and right any longer," Adams does not point to any particular obstructions that Lana caused. Nor does he explain how, other than in general, bare terms, he was prejudiced by Lana's involvement. Indeed, this Court stayed Lana's motion to withdraw because Adams did not have another attorney. This ground is therefore rejected.

Relatedly, in ground ten, Adams accuses the United States Attorneys Office and his attorney of conspiring with jail-administration officials at Allegany County—where Adams was housed during pre-trial proceedings—to block access to his inmate account.

This accusation requires some background: After deciding to release Lana and retain a new attorney, Adams apparently hoped to use funds from his inmate account to

compensate this new attorney. According to a motion filed by Lana, the Allegany County Sheriff, however, refused to release those funds. (Docket No. 16 of 8-CR-323.) In an affidavit opposing that motion, the Government explained that, aside from commissary purchases, an inmate is limited to one transfer from his account to outside parties. (Kane Aff., ¶ 13; Docket No. 18 of 8-CR-323.) It also noted that each inmate was advised of this policy. (Id.) And "[i]n early Autumn 2008," Adams exhausted that one-time option with a $100 transfer to the mother of his children; therefore the Sheriff permitted no further transfers. (Id.)

But regardless of the precise circumstances, there is simply no indication of any conspiracy to deny Adams his right to counsel of his choice. See United States v. Gonzalez-Lopez, 548 U.S. 140, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006) (Court's wrongful deprivation of a criminal defendant's choice of counsel is structural error). This Court did not limit Adams' choices and his unsupported allegations of a conspiracy are simply insufficient. See Newfield v. United States, 565 F.2d 203, 207 (2d Cir.1977) (a § 2255 motion supported by a "sufficient" affidavit including detailed and controverted issues of fact warrants a hearing, but "bald allegations" unsupported by evidentiary facts do not). Absent such a showing, the jail's policies regarding inmate accounts are not the proper subject for a § 2255 motion.[5]

Adams' conviction and sentence will therefore stand.

---

[5]Adams' desire for new counsel surfaced after he pleaded guilty, which, as discussed above, this Court found to be knowing and voluntary.

**C.     Certificate of Appealability**

For a certificate of appealability to issue, the petitioner must make a "substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2). To make the required "substantial showing," the petitioner must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Astuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations omitted). Chapman has made no such substantial showing of the denial of a constitutional right in this case, and a certificate of appealability is therefore denied.

## IV.  CONCLUSION

Adams' motion to vacate, set aside, or correct his sentence and conviction is denied. If he wishes to appeal, he must file a notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V.  ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction pursuant to 28 U.S.C. § 2255 (Docket No. 62) is DENIED.

FURTHER, that a Certificate of Appealability pursuant to 28 U.S.C. § 2253 is DENIED.

FURTHER, that it is hereby certified, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and leave to proceed as a poor person is therefore DENIED.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that the Clerk of the Court is directed to close case 11-CV-804S.

SO ORDERED.

Dated:         September 4, 2012
               Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                            Chief Judge
                                    United States District Court